UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JENNY RUBIN
DEBORAH RUBIN
2410 ½ Helm Ave.
Los Angeles, CA 90034

DANIEL MILLER
7871 Tennyson Ct.
Boca Raton, FL 33433

ABRAHAM MENDELSON
9521 Kirkside Rd.
Los Angeles, CA 90035

STUART ELLIOT HERSH
RENAY E. FRYM
Ha Palmach St.
Kiryat Arba, Israel

NOAM ROZENMAN
ELENA ROZENMAN
TZVI ROZENMAN
Naomi 15
Jerusalem, Israel

**FILED**

**JUL 3 1 2001**

CASE NUMBER   1:01CV01655

JUDGE: Ricardo M. Urbina

DECK TYPE: Personal Injury/Malpractice

DATE STAMP: 07/31/2001

Civil Action No.:

**COMPLAINT**

vs.

THE ISLAMIC REPUBLIC OF IRAN
Ministry of Foreign Affairs
Khomeini Ave. United Nations St.
Teheran, Iran

THE IRANIAN MINISTRY OF INFORMATION AND SECURITY
Pasdaran Ave. Golestan Yekom Teheran, Iran

AYATOLLAH ALI HOSEINI KHAMENEI
Supreme Leader of the Islamic Republic of Iran
Office of the Supreme Leader
Palestine St. Teheran, Iran

ALI AKBAR HASHEMI-RAFSANJANI
Former President of the Islamic Republic of Iran
Presidential Office Palestine St. Teheran, Iran

ALI FALLAHIAN-KHUZESTANI
Former Minister of Information and Security
Ministry of Information and Security
Pasdaran Ave. Golestan Yekom
Teheran, Iran

## NATURE OF ACTION

1.        This action is brought pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §1605 *et seq.*, by United States citizens harmed by a terrorist bombing on September 4, 1997 in Jerusalem, Israel, for damages against Iran and its agents for personal injury and related torts.

## JURISDICTION

2.        This Court has jurisdiction over this matter and defendants pursuant to 28 U.S.C. §§1330(a), 1331, 1332(a)(2), 1605(a)(7) and 28 U.S.C.A. §1605 note, *Civil Liability for Acts of State-Sponsored Terrorism* which create federal causes of action for personal injury and related torts against state sponsors of terrorism and their officials, employees and agents.

## VENUE

3.        Venue is proper in this Court pursuant to 28 U.S.C. §1391(f)(4).

## PARTIES

4.        JENNY RUBIN, an American citizen, was injured in a terrorist bombing on  September 4, 1997 by the HAMAS terrorist organization on the Ben Yehuda Street pedestrian mall in Jerusalem, Israel ("the terrorist bombing").

5.        DEBORAH RUBIN, an American citizen, is the mother of

JENNY RUBIN.

6.      DANIEL MILLER, an American citizen, was injured in the terrorist bombing.

7.      ABRAHAM MENDELSON, an American citizen, was injured in the terrorist bombing.

8.      STUART ELLIOT HERSH, an American citizen, was injured in the terrorist bombing.

9.      RENAY E. FRYM, an American citizen, is the wife of STUART ELLIOT HERSH.

10.     NOAM ROZENMAN, an American citizen, was injured in the terrorist bombing.

11.     ELENA ROZENMAN, an American citizen, is the mother of NOAM ROZENMAN.

12.     TZVI ROZENMAN, an American citizen, is the father of NOAM ROZENMAN.

13.     The Islamic Republic of Iran ("Iran") is a foreign state within the meaning of 28 U.S.C. §1603, and designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)).

14.     The Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service responsible for providing material support and

resources, and sponsoring the terrorists who planned and executed the terrorist bombing. Within the scope of its agency and office, MOIS provided material support and resources for terrorism and performed actions which caused the terrorist bombing and plaintiffs' injuries.

16. Ayatollah Ali Hoseini Khamenei ("Khamenei") is the Supreme Leader of Iran. Within the scope of his office, employment and agency, he performed actions which caused the terrorist bombing and plaintiffs' injuries.

16. Ali Akbar Hashemi-Rafsanjani ("Hashemi-Rafsanjani") is the former president of Iran. Within the scope of his office, employment and agency, he performed actions which caused the terrorist bombing and plaintiffs' injuries.

17. Ali Fallahian-Khuzestani ("Fallahian-Khuzestani") is the former Iranian Minister of Information and Security. Within the scope of his office, employment and agency, he performed actions which caused the terrorist bombing and plaintiffs' injuries.

## STATEMENT OF FACTS

18. On September 4, 1997, at the Ben Yehuda Street pedestrian mall in downtown Jerusalem, Israel, terrorists belonging to and acting on behalf of HAMAS simultaneously detonated several bombs packed with high explosives and shrapnel. The bombs killed four persons and injured nearly 200 others.

19. JENNY RUBIN, DANIEL MILLER, ABRAHAM MENDELSON, STUART ELLIOT HERSH and NOAM ROZENMAN ("the

Victims") were among those injured.

20.        HAMAS, the "Islamic Resistance Movement" (or in Arabic: "Harakat al-Muqawama al-Islamiyya"), is an international terrorist organization which receives routine and systematic material support and resources from defendants in furtherance of its terrorist objectives and activities.

21.        Since 1984, the United States Department of State designated Iran a state sponsor of terrorism.

22.        During the period relevant hereto, Iran provided HAMAS with material support and resources within the meaning of 28 U.S.C. §1605(a)(7), in order to facilitate and further the commission of terrorist attacks by HAMAS in furtherance and as implementation of a specific policy and practice established and maintained by Iran.

23.        The material support and resources provided by defendants to HAMAS within the meaning of 28 U.S.C. §1605(a)(7) includes, among other things: military and other training; training bases; facilities for training, storage of weapons and explosives, the maintenance and operation of a leadership command and operational infrastructure; safe haven; lodging; means of communication and transportation; communications equipment; and financial support.

24.        The MOIS, Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani provided material support and resources to HAMAS on behalf and in

furtherance of Iran's policies, and while acting within the scope of their office, employment and agency.

26.     At all relevant times, MOIS was the Iranian intelligence service, functioning both within and beyond Iranian territory.  Acting as an agent of Iran, MOIS performed acts within the scope of its agency, within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C. §1605 note, which caused the terrorist bombing and harm to plaintiffs, and acted as a conduit for Iran's provision of funds to HAMAS and training to terrorists under its direction. Accordingly, Iran is vicariously liable for the acts of MOIS.

26.     At all relevant times, Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani were agents, representatives, officers and employees of Iran and MOIS acting within the scope of their agency, office and employment and were senior officials of Iran, whose approval was necessary to carry out the economic commitment of Iran to HAMAS and the training of terrorists in Iran.

27.     At all relevant times, Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani engaged in the actions described herein within the scope of their agency, office and employment and to further the interests of Iran and MOIS. Accordingly, Iran and MOIS are vicariously liable for their acts.

28.     At all times relevant hereto, defendants provided HAMAS and its operatives with instruction and training in terrorism activities including the use of weapons and explosives ("Terrorist Training").

29.      Terrorist Training was provided to HAMAS and its operatives by and through Iranian military and intelligence officials, and other agents, employees and officials of Iran and MOIS acting under the command and direction of defendants. The Terrorist Training was provided both within Iran and in areas of Lebanon occupied by Syria, including the Beka'a Valley.

30.      At all times relevant hereto, defendants provided Terrorist Training to HAMAS and its operatives by and through the agency of other terrorist organizations, including HIZBOLLAH, which received material support and resources from defendants, and which acted as proxies and agents of defendants for the purpose of providing such Terrorist Training to HAMAS.

31.      At all times relevant hereto, defendants provided HAMAS and its leaders, officials and operatives with lodging, safe haven and shelter, in order to prevent their apprehension and permit them to conduct their terrorist activities freely and unhindered.

32.      In order to facilitate and further the commission of terrorist attacks by HAMAS, defendants gave substantial aid, assistance and encouragement to one another and to HAMAS, and knowingly and willingly conspired, agreed and acted in concert with one another and with HAMAS, in pursuance of a common plan and design, to provide material support and resources to HAMAS.

33.      In Eisenfeld v. Iran, (Civ. No. 98-1945(RCL)) this Court found that HAMAS receives "massive material and technical support from the Defendant,

The Islamic Republic of Iran" (Id. at 10), monthly financial support of $15,000,000, and that it had provided weapons and explosives training to HAMAS terrorists who planned and executed terrorist attacks. (Id. at 5-6).

## I. BATTERY

34.　　Paragraphs 1-33 are incorporated herein.

35.　　To facilitate and commit terrorist bombings, Defendants provided material support and resources to HAMAS and its operatives. The Victims were injured by a HAMAS bombing acting with defendants' material support, resources and sponsorship.

36.　　The terrorist bombing caused the Victims severe physical and psychological injuries, extreme pain, suffering and severe financial loss, including deprivation of present and future income.

37.　　As a result of the severe injuries inflicted on them by the terrorist bombing, the Victims required hospitalization and medical treatment.

38.　　The Victims continue to suffer from permanent injuries caused by the terrorist bombing.

39.　　Defendants' actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the terrorist bombing and the injuries suffered by the Victims.

40.　　The terrorist bombing was an act of extrajudicial killing within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C.A. §1605 note.

41.      The terrorist bombing was perpetrated by HAMAS who received material support and resources to carry out such acts from Iran, MOIS and the individual defendants while acting within the scope of their agency, office and employment.

42.      Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## II. ASSAULT

43.      Paragraphs 1 - 42 are incorporated herein.

44.      The terrorist bombing and the ensuing carnage caused the Victims fear and apprehension of harm and death, and actual physical harm.

45.      As a direct and proximate result of defendants' acts, the Victims have suffered extreme mental anguish, physical injury and pain and suffering.

46.      The terrorist bombing was a direct and proximate result of defendants' actions and constituted an assault on the persons of the Victims.

47.      Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## III. LOSS OF CONSORTIUM AND SOLATIUM

48.      Paragraphs 1 - 47 are incorporated herein.

49.     Due to the injuries caused to JENNY RUBIN, a minor on September 4, 1997, DEBORAH RUBIN was deprived of the services, society, guidance and consortium of her daughter, and suffered and will continue to suffer severe mental anguish, grief, and injury to her feelings.

50.     Due to defendants' actions, JENNY RUBIN was deprived of the services, society, guidance and consortium of her parents and siblings, and suffered and will continue to suffer severe mental anguish, grief and injury to her feelings.

51.     Due to the defendants' actions, RENAY E. FRYM was deprived of the services, society, guidance and consortium of her husband, and suffered and will continue to suffer severe mental anguish, grief, and injury to her feelings.

52.     Due to defendants' actions, STUART HERSH was deprived of the services, society, guidance and consortium of his wife, and suffered and will continue to suffer severe mental anguish, grief, and injury to his feelings.

53.     Due to the injuries caused to NOAM ROZENMAN, a minor on September 4, 1997, ELENA ROZENMAN and TZVI ROZENMAN were deprived of the services, society, guidance and consortium of their son, and suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

54.     Due to the injuries caused to him by defendants, NOAM ROZENMAN was deprived of the services, society, guidance and consortium of his

family and suffered and will continue to suffer severe mental anguish, grief and injury to his feelings.

55.      Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

56.      Paragraphs 1 - 55 are incorporated herein.

57.      Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

58.      Defendants intended to terrorize the plaintiffs and cause them egregious emotional distress.

59.      Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## V. CIVIL CONSPIRACY

60.      Paragraphs 1 - 59 are incorporated herein.

61.      Defendants knowingly and willingly conspired, planned and agreed to sponsor and provide material support and resources for the commission of

acts of extrajudicial killing by HAMAS, including the terrorist bombing in which plaintiffs were harmed.

62.      As a result of the terrorist bombing caused by defendants' conspiracy, plaintiffs suffered the damages enumerated herein. Defendants are therefore jointly and severally liable for all of plaintiffs' damages.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally on all counts as follows:

A.      Compensatory damages against all Defendants, jointly and severally, $300,000,000;

B.      Punitive damages;

C.      Reasonable costs and expenses;

D.      Reasonable attorneys' fees; and

E.      Such further relief as the Court finds.

Plaintiffs,
by their Attorney,

David J. Strachman
D.C. Bar No. D00210
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700