# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JENNY RUBIN *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 01-1655 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 82, 90 |
| | : | | |
| THE ISLAMIC REPUBLIC OF IRAN | : | | |
|  *et al.*, | : | | |
| | : | | |
| Defendants, | : | | |
| | : | | |
| and | : | | |
| | : | | |
| THE UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Intervenor. | : | | |

## <u>MEMORANDUM OPINION</u>

### DENYING THE PROPOSED INTERVENORS' MOTION TO INTERVENE; DENYING AS MOOT THE PROPOSED INTERVENORS' MOTION FOR AN EXTENSION OF TIME TO FILE A NOTICE OF APPEAL

## I. INTRODUCTION

In 2001, the plaintiffs sued the Islamic Republic of Iran and related defendants under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, for injuries sustained as a result of a terrorist attack in 1997. The defendants neither appeared in court nor responded to the complaint. Thus, in 2003, the court issued a default judgment in favor of the plaintiffs for $71,500,000.

As part of the plaintiffs' efforts to enforce their judgment, they initiated attachment proceedings in other districts against the University of Chicago, the Field Museum of Chicago, Harvard College and the Museum of Fine Arts in Massachusetts (collectively, "the Museums").

According to the plaintiffs, the Museums possess artifacts belonging to Iran that the plaintiffs may attach to satisfy their judgment.

The Museums have moved to intervene in this action to seek reconsideration of and potentially to appeal a June 3, 2008 order of this court authorizing the plaintiffs to attach property belonging to Iran to satisfy their judgment.  Because the Museums assert no valid justification for waiting until after the order was issued to move for intervention, the court denies the motion to intervene as untimely.[1]

## II.  FACTUAL & PROCEDURAL BACKGROUND

On July 31, 2001, the plaintiffs filed a complaint against the defendants for injuries sustained as a result of a terrorist attack in Jerusalem in 1997.  Comp.; Mem. Order (June 3, 2008).  The defendants did not appear in court or respond to the complaint.  Mem. Order (June 3, 2008) at 1 n.1.  Thus, on March 6, 2002, the Clerk of the Court entered default against the defendants.  *Id.*  The Court then conducted several evidentiary hearings, still without the participation of the defendants, which resulted in the court issuing a default judgment for the plaintiffs totaling $71,500,000 on September 10, 2003.  *Id.*  As of July 29, 2008, the plaintiffs had collected only $400,000 against the judgment.  Pls.' Opp'n at 4.

As part of the plaintiffs' continuing efforts to enforce their judgment, they have attempted to attach certain artifacts, allegedly belonging to Iran, which are housed at the Museums.  *Id.* at 5-10.  These attachment proceedings are being litigated in the United States District Courts for the Northern District of Illinois and the District of Massachusetts.  *Id.*  The two central issues in

---

[1]     The Museums have also filed a motion for an extension of time to appeal the court's June 3, 2008 order.  Because, as discussed below, the court denies the Museums' motion to intervene in this action, their motion for leave to late-file an appeal of the order is moot.

the attachment proceedings are whether the artifacts belong to Iran and whether Iran's sovereign immunity prevents the plaintiffs from attaching those artifacts.  *Id.*

Under the version of the FSIA in force at the time the default judgment was entered, plaintiffs were not permitted to attach property owned by foreign sovereign nations to satisfy judgments against those nations.  *See* 28 U.S.C. § 1609 (providing that "property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter").  Subsequently, however, Congress amended the FSIA by enacting the National Defense Authorization Act ("NDAA"), which broadened the rights of individuals seeking to obtain and enforce judgments against foreign sovereigns arising out of terrorist acts.  *See generally* Pub. L. No. 110-181, 122 Stat. 3 (2008). The NDAA established a new cause of action for victims of state-sponsored terrorism, and removed sovereign immunity protection for sovereign property owned by states responsible for terrorist acts.  28 U.S.C. §§ 1605A, 1610(g)(2).  The NDAA further provided that judgments entered under the old version of the FSIA "shall, on motion made by plaintiffs to the United States district court where the action was initially brought . . . be given effect as if the action had originally been filed under" the amended version of the FSIA.  28 U.S.C. § 1605A(c)(2).  Pub. L. No. 110-181, § 1083(c)(2).

The plaintiffs filed such a motion on March 28, 2008.  *See generally* Pls.' Mot. for Order Pursuant to § 1083(c)(2) of the Nat'l Defense Authorization Act ("Pls.' NDAA Mot.").  The Museums, concerned that granting the motion would adversely affect them in the ongoing attachment proceedings, mailed a letter to the Clerk of the Court on May 30, 2008, explaining

why they believed the motion should not be granted.[2]   Museums' Reply at 5 n.1.  They also faxed the letter to chambers on June 3, 2008.  Museums' Mot. at 4-5.  They did not, however, move to intervene, and the court granted the plaintiffs' motion.  *See generally* Mem. Order (June 2, 2008); Mem. Order (June 3, 2008).[3]

On June 16, 2008, two weeks after the court granted the plaintiffs' motion, the Museums moved to intervene "for the purposes of seeking reconsideration of this Court's Memorandum Orders of June 2, 2008 and June 3, 2008 and preserving an appeal."  Museums' Mot. at 1.  The Museums assert that they are entitled to intervene as a matter of right under Rule 24(a) and, in the alternative, that they are entitled to permissive intervention under Rule 24(b).  Museums' Mot. at 1; Museums' Mem. at 12.  The plaintiffs filed an opposition on July 29, 2008, claiming, *inter alia*, that the Museums have no legally cognizable interest in the action and that the motion to intervene is untimely.  Pls.' Opp'n at 2, 17.  With the Museums' motion fully briefed, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Intervene

Federal Rule of Civil Procedure 24 sets forth the requirements for intervention as of right and permissive intervention.  FED. R. CIV. P. 24; *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  Rule 24(a) provides for intervention as of right, stating that

---

[2]    As the Museums point out, their May 30, 2008 letter was not received by the court until June 2, 2008, the date on which the court granted the plaintiffs' NDAA motion.  *See* Museums' Reply at 5 n.1.

[3]    The court granted the plaintiff's motion in a memorandum order issued June 2, 2008.  *See generally* Mem. Order (June 2, 2008).  The court issued a corrected version of that memorandum order on June 3, 2008.  *See generally* Mem. Order (June 3, 2008).

> [o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

This Circuit has identified "four prerequisites to intervene as of right: '(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.'" *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *Sec. Exch. Comm'n v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)). In addition, an applicant must demonstrate that it has standing. *Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017-18 (D.C. Cir. 2003).

Alternatively, Rule 24(b) authorizes permissive intervention for an applicant who timely files a motion when a federal statute confers a conditional right to intervene or the applicant's claim or defense has a question of law or fact in common with the main action. Fed. R. Civ. P. 24(b). In considering a motion for permissive intervention, a court must determine whether the proposed intervention "will unduly delay or prejudice the adjudication of the rights of the original parties."[4] *Id.*

Timeliness is a threshold question for both permissive intervention and intervention as of right. *NAACP v. New York*, 413 U.S. 345, 365 (1973). "Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied." *Id.*;

---

[4]     In this Circuit, "there is uncertainty over whether standing is necessary for permissive intervention." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C. Cir. 2000).

*see also United States v. British Am. Tobacco Austl. Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (holding that "[a]s a threshold matter . . . Rule 24 requires prospective intervenors to file a 'timely application'"); *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004) (noting that "[u]nder either [Rule 24(a) or Rule 24(b)], the prospective intervenors' motion must be 'timely'"), *abrogated on other grounds sub nom.*, *Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009); *Mass. Sch. of Law v. United States*, 118 F.3d 776, 783 n.5 (D.C. Cir. 1997) (noting that "untimeliness in seeking intervention may justify its denial without consideration of the merits").

### B.  The Court Denies the Museums' Motion to Intervene as Untimely

The Museums assert that their motion to intervene is timely because it was filed "within the 10 business days for filing a motion for reconsideration under 59(e) and well within the thirty days permitted for filing a notice of appeal."  Museums' Mot. at 6-9.  The plaintiffs respond that the Museums' motion to intervene is untimely because the Museums had the opportunity to file it before the court granted the plaintiffs' motion but chose not to do so, instead submitting a letter opposing the plaintiffs' § 1083(c)(2) motion and waiting until after the motion was granted to move to intervene.  Pls.' Opp'n at 17-18.  They also assert that sending the letter was improper and sanctionable.  *Id.*  The Museums respond by asserting that they decided to send the letter instead of moving to intervene because they were "driven by a desire to present important arguments to the Court in as timely a fashion as possible."  Museums' Reply at 5-6.  They also state that they sent the letter as soon as they determined that the plaintiffs had misconstrued the NDAA because they "feared that the Court might soon rule on Plaintiffs' request . . . without the benefit of adversarial briefing."  *Id.*

The timeliness of a motion to intervene "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the

purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *British Am. Tobacco Austl. Servs.*, 437 F.3d at 1238 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)).  This Circuit has, however, made clear that "[a] motion for 'intervention after judgment will usually be denied where a clear opportunity for pre-judgment intervention was not taken.'" *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999) (quoting *Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

In *Associated Builders*, the proposed intervenor filed a motion to intervene several weeks after the district court had ruled on the parties' cross-motions for summary judgment.  166 F.3d at 1254.  In reviewing the district court's denial of the motion, the Circuit noted that the proposed intervenor "offered no reason, and no reason [was] apparent from the record, why it could not have sought intervention prior to judgment." *Id.* at 1257.  In light of this failure, and "given the presumption that post-judgment motions to intervene will be denied," the Circuit affirmed the district court's denial of the motion, observing that "*any* motion for intervention must be 'timely.'" *Id.* (citing FED. R. CIV. P. 25) (emphasis added); *see also Mass. Sch. of Law*, 118 F.3d at 783 n.5 (denying permissive intervention and holding that when "would-be intervenors . . . inexcusably neglect to try to enter the proceedings before judgment, at a time when notice of their arguments would have enabled the district court to avert the alleged errors . . . post-judgment intervention for the purpose of challenging those supposed defects on appeal would rightly be denied as untimely" (citing *NAACP*, 413 U.S. at 366-68)); *Moten v. Bricklayers & Plasterers*, 543 F.2d 224, 227-28 (D.C. Cir. 1976) (denying a motion to intervene as of right

and holding that "cases in this Circuit permitting post-judgment intervention should not be

controlling where clear opportunity for pre-judgment intervention . . . was not taken").

In this case, the Museums were aware long before the court granted the plaintiffs' motion

in June 2008 that their interests were implicated in these proceedings.  *See Catanzano v. Wing*,

103 F.3d 223, 232 (2d Cir. 1996) (noting that the relevant inquiry for determining timeliness of a

motion to intervene is the point at which the proposed intervenor knew or should have known

that an action could affect his interests).  By February 2005, the plaintiffs had initiated

attachment proceedings against the Museums in both the Northern District of Illinois and the

District of Massachusetts seeking to enforce the default judgment issued in this case.  *See*

Museums' Mot. at 11; Pls.' Opp'n at 5-10.  The Museums must have been aware early in the

course of those proceedings that their interests were implicated in this action.

Moreover, the Museums had reason to intervene beginning on March 28, 2008, when the

plaintiffs filed their motion for retroactive application of the NDAA.  The Museums, however,

did not move to intervene at that point, and indeed, took no action for two full months, when,

instead of moving to intervene, they sent a letter to the court expressing their views on the merits

of the plaintiffs' motion.  *See* Museums' Reply at 5 n.1.  Although the Museums assert that they

sent the letter as soon as they determined that the plaintiffs had misconstrued the NDAA,

Museums' Reply at 5-6, they offer no explanation for why they waited two months after the

plaintiffs filed their motion regarding the NDAA to raise their arguments to the court.  *See*

*generally* Museums' Mot.; Museums' Reply.  Moreover, the Museums offer no explanation for

why they chose to submit a letter[5] rather than filing a motion to intervene, in which they could

have referenced their substantive grounds for opposing the plaintiffs' motion and requested that

---

[5]     Even if the court had been inclined to consider the substantive arguments raised by the Museums, who were non-parties to this action, the Museums' letter did not arrive at the court until the day the court issued an order granting the plaintiffs' motion.  *See* Museums' Reply at 5 n.1.

the court delay ruling on the plaintiffs' motion pending resolution of the motion to intervene. *See generally* Museums' Mot.; Museums' Reply.  Instead, the Museums submitted a letter, with the apparent hope that the court would consider arguments submitted by a non-party to the litigation.  This hope, however, was unfounded and does not justify their failure to seek formal intervention in a timely fashion.  Thus, the Museums had a clear opportunity to intervene in this action prior to the resolution of the plaintiffs' motion but chose not to do so.

The Museums rely on *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977), to assert that motions to intervene are timely as long as they are filed within the time period for filing an appeal or seeking reconsideration.  *See* Museums' Mot. at 6.  Yet in *McDonald*, the post-judgment motion for permissive intervention was granted because "there was no reason for the [intervenor] to suppose that [the named plaintiffs] would not take an appeal until . . . after the trial court had entered its final judgment."  *McDonald*, 432 U.S. at 394.  Indeed, the Court noted "the critical fact" that "as soon as it became clear to the [intervenor] that the interests of the [non-parties] would no longer be protected by the named [parties], she promptly moved to intervene." *Id.*

In construing the holding of *McDonald*, this Circuit has required that motions to intervene be filed before the entry of judgment unless the proposed intervenor does not know until after judgment is entered that the named parties will not protect its interests.  *See Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (granting a post-judgment motion to intervene as of right because "the potential inadequacy of representation came into existence only at the appellate stage" (quoting *Dimond*, 792 F.2d at 193)); *Associated Builders*, 166 F.3d at 1257 (noting that in *McDonald*, "the necessity of intervention did not arise until after judgment had been entered" (citing *McDonald*, 432 U.S. at 393-94)).  In this case, the Museums knew that

intervention would be needed to protect their interests long before the plaintiffs' motion was granted, given the defendants' failure to participate at any point in this action.  At the very least, the Museums must have been aware of the need for intervention when the deadline for opposing the plaintiffs' NDAA motion passed without any action from the defendants.  Accordingly, the exception for post-judgment intervention set forth in *McDonald* does not apply.  *See Associated Builders*, 166 F.3d at 1257 (citing *McDonald*, 432 U.S. at 393-94); *Moten*, 543 F.2d at 227-28.

The Museums also rely on *Acree v. Republic of Iraq*, 370 F.3d 41 (D.C. Cir. 2004), in which this Circuit held that the district court abused its discretion in denying a post-judgment motion to intervene.  Museums' Mot. at 6.  In *Acree*, however, the Circuit stated that it was making an exception to the established rule due to the "unique circumstances of [the] case," – namely, that it was "a case with undeniable impact on the Government's conduct of foreign policy."  *Acree,* 370 F.3d at 50.  Indeed, the Circuit explicitly grounded its holding on the foreign policy implications of the case, stating that although "[c]ourts are generally reluctant to permit intervention after a suit has proceeded to final judgment, particularly where the applicant had the opportunity to intervene prior to judgment . . . in light of its clear foreign policy interests, the United States was entitled to intervene as of right."  *Id.* at 49-50.

The motion to intervene now before the court has not been brought by the United States based on its foreign policy interests in the action, but instead by a group of museums.  *See generally* Museums' Mot.  Moreover, the United States has already intervened in this action to assert its foreign policy interests.  *See* Minute Order (July 15, 2004); *see generally* United States' Motion to Quash Pls.' Writ of Attachment (Aug. 2, 2004).  The Museums' motion to intervene,

therefore, does not merit the exception that was applied in *Acree*.[6]

In short, the Museums have offered no explanation for their failure to seek intervention prior to the court's resolution of the plaintiffs' motion, despite the fact that they had a clear opportunity to do so.  Accordingly, their motion to intervene is untimely and must be denied.

## IV. CONCLUSION

For the foregoing reasons, the court denies the Museums' motion to intervene and denies as moot the Museums' motion for an extension of time to appeal.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 8th day of September, 2010.

RICARDO M. URBINA
United States District Judge

---

[6]    The Museums also rely on *Benzman v. Whitman*, 2006 WL 3771014 (S.D.N.Y. Dec. 15, 2006). Museums' Mot. at 6.  Yet *Benzman* concerned a case in which the motion to intervene had already been denied, and the motion to *reconsider* that denial was found to be timely.  2006 WL 37710014, at *1, 3.  Accordingly, the Museums' reliance on *Benzman* is misplaced.